IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TITUS CAPITAL I, LLLP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NO. 13-CV-282-WDS |
| | ) |
| **SIGNCO,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is defendant SignCo's motion to transfer this action to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a) (Doc. 12) and brief in support (Doc. 13). Plaintiff Titus Capital I, LLLP ("Titus") filed a memorandum in opposition to defendant's motion to transfer venue (Doc. 16), and defendant filed a reply (Doc. 19). Plaintiff also filed a motion for leave to file supplemental authority (Doc. 25), to which defendant did not file a response.

**BACKGROUND**

The plaintiff is a Florida limited liability limited partnership with its principal place of business in Madison County, Illinois. Defendant is a Nebraska corporation with its principal place of business in Nebraska.[1]

---

[1] The Court is satisfied, at this time, that it has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332. Upon review of the plaintiff's jurisdictional supplement (Doc. 33), it is clear that the citizenship of the parties is completely diverse and that the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

On or about May 16, 2012, the defendant entered into an Asset Purchase Agreement with one of the plaintiff's subsidiaries, Titus Capital Partners, LLC, in order to sell substantially all of defendant's business assets. SignCo is in the business of selling and servicing advertising and display systems, scoring systems, and scoring tables. (Doc. 17). Titus Capital Partners, LLC subsequently assigned this Asset Purchase Agreement to the plaintiff. Plaintiff alleges it instructed the defendant not to issue any purchase orders without the plaintiff's approval. Despite this, the defendant apparently issued a purchase order in the amount of approximately $346,432.00 to Leyard Opto-Electronic Co. ("Leyard"). The plaintiff alleges that the defendant represented that the purchase order for EV-10 Silan tiles was critical to the immediate future of the business. Subsequently, an employee of defendant's business allegedly informed plaintiff that Leyard had committed to providing warranty tiles at no cost, and that plaintiff, after purchasing the defendant's business, would be allowed to keep these replacement warranty tiles at no cost.

Plaintiff alleges that these representations induced plaintiff to purchase defendant's business by artificially inflating defendant's expected revenue producing work from which it would benefit following the closing on its purchase of defendant's business. Plaintiff further claims that these alleged intentional concealments and intentionally false statements were completed only days before the scheduled closing of plaintiff's purchase of defendant's business and at a time when the defendant allegedly knew the plaintiff was debating the actual profitability of defendant's business and whether or not to go through with the purchase.

This action arises out of defendant's alleged intentional concealment and misrepresentation of material facts as to (1) the warranty relating to Leyard's product, and (2) the revenue producing work from which plaintiff would benefit following its purchase of

2

defendant's business. Plaintiff seeks (1) damages exceeding $500,000.00 in order to fairly compensate it for the diminished value of the business purchased from the defendant, (2) reasonable attorneys' fees and costs of suit, and (3) punitive damages.

Defendant has filed a counterclaim, alleging that plaintiff breached the Asset Purchase Agreement by failing to pay post-closing commissions to defendant. (Doc. 14 at 8). Defendant seeks judgment against plaintiff in an amount to be determined at trial, and reasonable attorney's fees and costs of suit.

Defendant, in its motion to transfer venue, seeks to transfer this action to the United States District Court for the District of Nebraska based on convenience of the parties and the interest of justice (Doc. 12). Subsequent to responding to defendant's motion, plaintiff filed a motion for leave to file supplemental authority (Doc. 25). The plaintiff seeks to introduce an order from a Nebraska state case, *RS Electronics v. SignCo, Inc.*, No. CI-13-1540 (Aug. 19, 2013). In that order, the Nebraska state court held that the defendant's third-party complaint against the plaintiff was dismissed because of the mandatory forum selection clause in the Asset Purchase Agreement.

## ANALYSIS

I. MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

The Court will first consider plaintiff's motion for leave to file supplemental authority, as the supplemental authority potentially bears on whether or not the motion to transfer venue will be granted. If a party believes it is necessary to supplement its brief with new authority "due to a change in the law or the facts that occurred after the filing of its brief, the party must seek leave of court to file a supplemental brief." Local Rule 7.1(g).

The authority the plaintiff seeks to bring to the Court's attention is an order from the County Court of Lancaster County, Nebraska, from a case entitled *RS Electronics v. SignCo, Inc.*, No. CI-13-1540. Titus was named a third-party defendant, and SignCo was a third-party plaintiff. This particular order relates to Titus' motion to dismiss SignCo's third-party complaint. SignCo filed this third-party complaint in Nebraska alleging breach of contract, indemnification and contribution, and, in the alternative, quantum meruit and conversion. These claims all arose out of Titus' purchase of SignCo's business and the alleged breach of the Asset Purchase Agreement between the parties. Titus claimed that the third-party complaint against it was brought in an improper forum and venue pursuant to the forum selection clause in the Asset Purchase Agreement and moved to dismiss. The forum selection clause designated Madison County, Illinois as the proper forum. The Nebraska court found that the mandatory forum selection clause required dismissal, and noted that "[t]his court cannot use one party's present convenience as a reason to rewrite its contract with the other party." (Doc. 25-1 at 4) (internal quotations and citations removed). Plaintiff asserts that the findings of the Nebraska state court support its argument in opposition to defendant's motion to transfer.

This Court **FINDS** that plaintiff's proposed supplemental authority is helpful in determining whether transfer is proper, as it directly discusses the factual circumstances surrounding whether the transfer is clearly convenient. Therefore, plaintiff's unopposed motion for leave to file supplemental authority (Doc. 25) is **GRANTED**, and the Court will take the noted authority into consideration upon ruling on the motion to transfer venue.

## II. MOTION TO TRANSFER VENUE

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," this Court may transfer an action "to any other district or division where it might have

been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In order to obtain transfer for convenience of the parties and witnesses, in the interest of justice, the movant must "demonstrate: (a) that venue is proper in the transferor district; (b) that venue and jurisdiction are proper in the transferee district . . . ; and (c) that transfer will serve the convenience of the parties and witnesses and promote the interest of justice." *Waeltz v. Delta Pilots Retirement Plan*, 137 F.Supp.2d 1091, 1095 (S.D. Ill. 2001); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The movant (here, the defendant) has the "burden of establishing, by reference to particular circumstances, that the transferee forum is *clearly* more convenient." *Coffey*, 796 F.2d at 219-20 (emphasis added).

The parties do not dispute that the forum is proper here. The parties also do not dispute that the forum would be proper in the District Court for the District of Nebraska, as that court would also have diversity jurisdiction. Moreover, as defendant resides in that district, the District Court for the District of Nebraska has jurisdiction over the defendant. This motion, therefore, turns on whether transfer will serve the convenience of the parties and witnesses and promote the interest of justice.

In assessing the convenience of the parties and witnesses, the Court considers: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties litigating in the respective forums; and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000); *see also Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Moreover, "[t]ransfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party." *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995) (internal quotation omitted). "The weighing of factors

for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219.

"The interest of justice component embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Carillo v. Darden*, 992 F.Supp. 1024, 1026 (N.D. Ill. 1998) (internal quotations omitted). "In determining the interest of justice, courts must consider: (A) the speed at which the case will proceed; (B) the court's familiarity with the law that governs the action; and (C) the relation of the locale to the controversy and the desirability of settling the matter in that forum." *Mercantile Capital Partners v. Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *6 (N.D. Ill. Feb. 10, 2005). The Court will analyze each prong separately.

### A. The Convenience of the Parties

Defendant asserts that this Court should transfer the venue to the District of Nebraska because it is the "most convenient and practical venue to litigate Plaintiff's claims." (Doc. 13 at 1). Defendant proffers three main points: (1) that the significant events that form the basis of plaintiff's claims occurred in Nebraska; (2) that defendant's only office, all of its tangible assets, and all of its employees are located in Nebraska; and (3) there are three civil actions with related parties currently pending in Nebraska. (Doc. 13 at 1). Plaintiff, on the other hand, argues primarily that the mandatory forum selection clause, which states that the Southern District of Illinois is the exclusive jurisdiction for litigation, is binding upon the defendant. (Doc. 16 at 1). Moreover, plaintiff maintains that a transfer of venue would merely transform the inconvenience of one party into the inconvenience of the other. (Doc. 16 at 8).

First, the Court considers the plaintiff's chosen forum. Here, plaintiff's chosen form is the Southern District of Illinois. The plaintiff is a Florida limited liability limited partnership

with its principal place of business in Madison County, Illinois. Madison County, Illinois, falls within jurisdiction of the District Court for the Southern District of Illinois. Defendant asserts that Illinois is not the home forum of the plaintiff and that Illinois has nothing to do with this case.

A plaintiff's chosen forum is generally entitled to substantial weight under § 1404(a). *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 832 (N.D. Ill. 1999). However, "where the plaintiff's chosen forum is not the plaintiff's home forum or lacks significant contact with the litigation, the plaintiff's chosen forum is entitled to less deference." *Id*. Since this forum encompasses plaintiff's principal place of business, it is entitled to deference over defendant's desired forum in Nebraska.

Perhaps more significant than the fact that plaintiff's principal place of business is in Illinois, however, is that the parties entered into a contract (the Asset Purchase Agreement) that contained the following forum selection clause:

> The *exclusive*[2] jurisdiction for litigation of any dispute relating to this Agreement shall be the Circuit Court of Madison County, Illinois, or the Federal Court for the Southern District of Illinois.

(Doc. 16 at 2) (emphasis added). Moreover, there is a choice of law clause within the Asset Purchase Agreement stating that Illinois law shall govern[3] the interpretation of the contract.

The Supreme Court of the United States has held that a forum selection clause is a "significant factor" that should figure "centrally" into the decision to transfer venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). If "a forum selection provision is valid, there

---

[2] Notably, this is a *mandatory* forum selection clause, rather than a *permissive* one. The use of the word "exclusive" in a forum selection clause has been held to make a forum selection clause mandatory. *See Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984-JPG, 2010 WL 706047, at *3 (S.D.Ill. Feb. 24, 2010) (finding that "[b]y agreeing to submit to the '*exclusive* jurisdiction' in a particular forum, the parties . . . manifest their intent to make that venue exclusive and to exclude venue in all other jurisdictions." (emphasis added)).
[3] This factor will be discussed further infra.

is a strong presumption against transfer." *GE Bus. Fin. Servs. Inc. v. Spratt*, No. 08 C 6504, 2009 WL 1064608, at *3 (N.D. Ill. April 20, 2009) (internal quotations omitted). An enforceable forum selection clause "is not to be circumvented by the grant of a motion for a change of venue." *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d. 372, 378 (7th Cir. 1990).

Furthermore, an enforceable forum selection clause results in a movant's waiver of its right to assert its own inconvenience as a reason to transfer. *Id*. An enforceable forum selection clause cannot, however, waive the factors of convenience of third-party witnesses and the interest of justice. *Heller Fin., Inc. v. Midwhey Powder Co. Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Third-party witnesses do not include employees of the defendant, because they are, for present purposes, "subsumed into their employers as party defendants." *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07-C-4023, 2007 WL 3120011, at *2 (N.D. Ill. Oct. 24, 2007); *see also*, *Nw. Nat'l Ins. Co.*, 916 F.2d at 376 (noting that "the inconvenience to employees would have been taken into account when the clause was drafted.").

Here, the defendant does not assert that the forum selection clause is invalid. Therefore, the Court shall, for the purposes of the motion under consideration, assume that the forum selection clause is both valid and enforceable. As a result of the forum selection clause, the defendant cannot assert its own inconvenience or the inconvenience of its employees as a valid reason to transfer venue.[4] The decision to transfer venue, therefore, depends on whether or not there is any inconvenience to either third-party witnesses or if the transfer would be in the interest of justice.

With respect to third-party witnesses, defendant names six people, some of whom are not currently employed by defendant's former business, as the third-party witnesses who would be

---

[4] Notably, plaintiff bought the defendant's business. When defendant is asserting inconvenience on its "employee's behalf," therefore, it is actually asserting inconvenience on the *plaintiff's* employee's behalf.

inconvenienced if the trial were to be conducted in Illinois. (Doc. 13 at 2-3). As noted above, the potential witnesses that are currently employed at defendant's former business are not considered third-party witnesses because they would have been taken into consideration at the time the agreement was executed. The potential witnesses that are no longer employees may or may not be considered third-party witnesses. The Court notes that, at the time plaintiff's claims allegedly took place, these "non-party witnesses" were employees of defendant's former company. They would have, therefore, been taken into consideration at the time the Asset Purchase Agreement was entered into. It is likely that these witnesses would actually be considered "party witnesses" and not subject to this analysis. Assuming *arguendo* that they are third-party witnesses, however, the inconvenience they would experience is not sufficient to warrant transfer.

     Nonetheless, the defendant claims there are at least two witnesses who are former employees and not under the control of the defendant. (Doc. 19 at 3). Similarly, the plaintiff claims that it has at least one third-party witness who is not under its control. Neither party discusses the issue of third-party witnesses with sufficient specificity to show that the third-party witnesses would refuse to travel from one district to another.

     Defendant's main assertion of inconvenience in this district is based on the fact that certain third-party witnesses reside in or around Lincoln, Nebraska. (Doc. 13 at 7). The inconvenience to the third-party witnesses relates strictly to travel. While the distance and travel could tip the balance in favor of transfer, this would merely result in the transfer of inconvenience of the defendant into the inconvenience of the plaintiff. Both claim to have important third-party witnesses who would be inconvenienced by the transfer, and one party or the other is going to have to travel in order to get to the forum.

The defendants in *DeGuzman v. Kalish*, No. 10 C 8066, 2011 WL 1378928, at *3 (N.D. Ill. April 12, 2011), made a similar argument for the transfer of venue.  The court found that the defendants' only "cogent argument" in support of their motion to transfer venue was that they were domiciled in Massachusetts, and they would be required to travel to Illinois to defend the lawsuit.  *Id*.  The defendants argued that the travel to the other venue would pose "an inconvenience and possible financial hardship under the third *Coffey* requirement, namely, that transfer will serve the convenience of the parties and the witnesses." *Id*.  The court held that the "[d]efendants' argument that they are inconvenienced because they live in Massachusetts simply does not outweigh the fact that Plaintiff chose to bring this lawsuit in Illinois, the situs of the material events are in Illinois, and that it would be inconvenient for Plaintiff to litigate this matter in Massachusetts." *Id*.

Here, while defendant has asserted that it would be inconvenient for its third-party witnesses to travel to Illinois, this factor simply does not outweigh the fact that the plaintiff brought the suit in Illinois, there is a valid and enforceable mandatory forum selection clause, and that there is a choice of law clause stating that Illinois law governs any actions arising out of the Asset Purchase Agreement.

The Court next evaluates whether the chosen forum or the transferee forum is site of the material events.  The defendant states that the "material events took place in Nebraska as Plaintiff alleges fraud in the purchase of a Nebraska business." (Doc. 13 at 7).  When considering the site of material events in a contract case, courts consider where the contract was negotiated and signed.  *Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *2 (N.D. Ill. Feb. 6, 2013).  The fact that plaintiff purchased a Nebraska business does not alone make Nebraska the site of material events.  Plaintiff claims that material events did take

place in Illinois because the "dispute arises out of an Asset Purchase Agreement that was signed by an Illinois LLC in Illinois" and "misrepresentations that were made in Illinois to . . . Illinois residents, and due diligence was performed . . . in Illinois." (Doc. 16 at 9). Moreover, the plaintiff notes that this dispute is governed by Illinois law per the choice of law clause within the Asset Purchase Agreement.

Defendant further asserts that plaintiff's claims are "centered on SignCo's business records, which are located in Nebraska." (Doc. 13 at 7). Similarly, plaintiff argues that its accounting records are "more conveniently available in Illinois." (Doc. 16 at 10). However, as plaintiff notes, the Court should "consider the *availability* of evidence in each forum, not the *location* of the evidence." *Chaklos v. Stevens*, No. 06-4063-JPG, 2006 WL 2247309, at *3 (S.D. Ill. Aug. 4, 2006) (internal quotations omitted). As in *Chaklos*, the availability of the evidence in each forum is nearly identical. *Id*. In either forum, the parties can ship documents. Moreover, if transfer were to be granted, this would be yet another instance of transferring the inconvenience of one party into the inconvenience of the other. If the action remains in Illinois, the plaintiff will not be legally hampered in its discovery efforts when trying to access sources of proof located in Nebraska. Likewise, the defendants will not be legally hampered in their attempts to access sources of proof located in Illinois. Therefore, this factor does not help tip the scale in favor of transfer, or weigh against the strong presumption against transfer in light of the forum selection clause.

The defendant has failed, therefore, to show that the mandatory forum selection clause should be overridden on the basis that a different forum would be more convenient for third-party witnesses.

B. **The Interest of Justice**

"The interest of justice component embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Carillo v. Darden*, 992 F.Supp. 1024, 1026 (N.D. Ill. 1998) (internal quotations omitted). "In determining the interest of justice, courts must consider: (A) the speed at which the case will proceed; (B) the court's familiarity with the law that governs the action; and (C) the relation of the locale to the controversy and the desirability of settling the matter in that forum." *Mercantile Capital Partners v. Agenzia Sports, Inc*., No. 04 C 5571, 2005 WL 351926, at *6 (N.D. Ill. February 10, 2005). The Court will analyze each prong separately.

In analyzing the speed at which a case may proceed to trial, the defendant accurately cites that the median time from filing to disposition of a civil case is 7.7 months in the District of Nebraska and 10.5 months in the Southern District of Illinois. *See* Comparison of Districts Within the Eighth Circuit and within the Seventh Circuit 12-Month Period Ending September 30, 2012, at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourt ManagementStatistics/2012/comparison-districts-within-circuit-september-2012.pdf&page=7 (last visited October 9, 2013). The median time from filing a civil case to trial is 20.8 months in the District of Nebraska and 23.7 months in the Southern District of Illinois. *Id.*

The difference of slightly more than two months, although negligible, weighs slightly in favor of transfer to the District of Nebraska. The Court notes, however, these statistics report the "*median*" time it would take. There is no telling how long this *particular* action will take. Additionally, as the plaintiff noted, it may take longer with a transfer because the District of Nebraska will have to acquaint itself with Illinois law regarding fraud and will need time to familiarize itself with the case. *See Q Sales & Leasing, LLC v. Quilt Prot. Inc.*, No. 01 C 1993,

2002 WL 1732418, at *4 (N.D. Ill. July 26, 2002) (noting that "[r]equiring a California court to familiarize itself with the law, facts and procedural posture of this case would be a waste of judicial resources.").

Regarding this Court's familiarity with the law that governs this action, defendant merely states that "[t]here is no compelling basis for retaining this case in Illinois based on a choice of law argument." (Doc. 13 at 9). The Asset Purchase Agreement, however, contains a choice of law provision stating that this dispute is governed by Illinois law. (Doc. 16 at 12). The action arises out of defendant's alleged fraudulent concealment and misrepresentations. The Court, therefore, being situated in Illinois, is more equipped than the Nebraska District Court to settle matters concerning Illinois law on fraud. *See Q Sales*, 2002 WL 1732418 at *4 (concluding that "[a] federal court in the Northern District of Illinois is more likely to be familiar with Illinois law than a federal court in the Northern District of California would be."); *School Stuff, Inc. v. School Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050, at *6 (N.D. Ill. May 21, 2001) (reasoning that a federal court in Illinois is more familiar with Illinois Consumer Fraud and Deceptive Trade Practices Act than a federal court located in another state).

In reference to the relation of the locale to the controversy and the desirability of settling the matter in Nebraska, the defendant primarily relies on the fact that there are three pending state court cases in Lincoln, Nebraska, that relate to the Asset Purchase Agreement at issue here. (Doc. 13 at 8). The defendant opines that these actions are related, and that this fact alone should tip the balance slightly in favor of transferring this action to the District of Nebraska.

First, as defendant notes, these cases are pending in *state* court. The state court actions cannot be consolidated with this federal action to be tried all at once. Regardless of the fact that it may be inconvenient for those who are witnesses in multiple trials to have to travel between

two states, this only adds a slight inconvenience.  Moreover, since these actions cannot be consolidated, this will add no more efficiency to the resolution of each case.[5]  The trial of four separate cases in the same state will be no more efficient than the trial of three in one state and one in the other.

Lastly, the plaintiff's motion for leave to file supplemental authority provides the court with an order from the County Court of Lancaster County, Nebraska which "dismissed Defendant Signco Inc.'s Third Party Complaint against Titus Capital I, LLLP because of the *mandatory forum selection clause* in the parties' agreement."  (Doc. 25 at 2) (emphasis added).  Perhaps if the Nebraska state court had decided that the forum selection clause did not mandate removal to Illinois, this Court would be persuaded that the motion to transfer venue should be granted.  Unfortunately for the defendant, this is not what occurred.

The defendant has failed, therefore, to show that it would serve the interest of justice to transfer this case to Nebraska.

## CONCLUSION

The defendant has failed to show that transferring the forum to the District Court of the District of Nebraska is required despite the mandatory forum selection clause, and moreover, has failed to show that Nebraska would be a more convenient venue for third-party witnesses, or serve the interests of justice.   Accordingly, the defendant's motion to transfer venue to the United States District Court for the District of Nebraska (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

**DATE: October 30, 2013**

                                      **/s/  WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**

---

[5] It should be noted that none of the state cases have been consolidated.